UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GLOBAL AUTO, INC., G. AUTO SALES,
INC., and EFFECT AUTO SALES, INC.,

                    Plaintiffs,                  **MEMORANDUM & ORDER**
                                             13-CV-2479 (PKC) (RER)

         - against -

MICHAEL HITRINOV, a/k/a MICHAEL
KHITRINOV, EMPIRE UNITED LINES, CO.
INC. MEDITERRANEAN SHIPPING
COMPANY (USA), INC., and JOHN DOES 1
THROUGH 5,

                    Defendants.
--------------------------------------------------------x
EMPIRE UNITED LINES CO., INC., and
MICHAEL HITRINOV,

                    Plaintiffs,

         - against -                     14-CV-2566 (PKC) (RER)

SK IMPORTS, INC., d/b/a/ GLOBAL CARS, and
SERGEY KAPUSTIN,

                    Defendants.

--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      On May 22, 2020, proposed intervenors Ardak Akishev, Zhandos Aliakparov, Alexey

Batalov, Evgeniy Borzenko, Igor Glazunov, Irina Glazunova, Andrey Kirik, Natalia Kirik,

Arkadiy Kolbin, Evgeniy Kondratuk, Eduard Lisitsyn, Vladimir Lukyanov, Viktor Maniashin,

Mikhail Matveev, Alexander Pukir, Evgeniy Telin, Yuriy Yamkoviy, Alla Yamkovaya, Alexander

1

Zhilinskiy, Elena Zvereva, Mikhail Zverev (the "NJ Plaintiffs")[1] filed a motion to transfer venue of the instant two matters to New Jersey, or, in the alternative, to intervene and oppose the pending motion for default judgment and assessment of damages filed on January 29, 2020 by Empire United Lines Co., Inc. and Michael Hitrinov (collectively "Empire") against Global Auto, Inc., G Auto Sales, Inc., and Effect Auto Sales, Inc., in the above-captioned action docketed 13-CV-2479, as well as against SK Imports, Inc. d/b/a Global Cars ("SK Imports") and Sergey Kapustin (collectively "Global") in the consolidated above-captioned action docketed 14-CV-2566.  On January 12, 2021, the Honorable Ramon E. Reyes, Jr., Magistrate Judge, issued a Report and Recommendations ("R&R") recommending that the motion to intervene should be denied as untimely and the motion to transfer denied for lack of standing.  On January 26, 2021, the NJ Plaintiffs objected to certain portions of the R&R.

For the reasons set forth below, the Court adopts Judge Reyes' R&R in its entirety, and denies the NJ Plaintiffs' motion to intervene as untimely and their motion to transfer for lack of standing.

## BACKGROUND

The NJ Plaintiffs' motions to intervene and transfer involve three cases—the two above-captioned cases, *Global Auto, Inc. v. Hitrinov* ("*Global Auto*"), No. 13-CV-2479 (PKC) (RER) and *Empire United Lines Co., Inc. v. SK Imports, Inc.,* ("*Empire United*"), No. 14-CV-2566 (PKC) (RER), as well as a case pending in the District of New Jersey, *Akishev v. Kapustin et al.* (the "New Jersey Action"), No. 13-CV-7152 (NLH) (AMD).[2]

---

[1] As discussed below, the proposed intervenors are plaintiffs in a pending case in federal court in New Jersey, *Akishev v. Kapustin*, N.J. Docket No. 13-CV-7152 (NHL) (AMD).

[2] Consistent with the R&R, the Court will preface citations to the dockets for each of the cases with the following designations—citations to the docket in *Global Auto* will be prefaced

By way of background,[3] these cases arise out of an allegedly fraudulent scheme to sell American cars to European consumers.  On April 24, 2013, Global, which was "primarily in the business of purchasing and exporting used cars from the United States to the states that comprised the former Soviet Union," commenced the *Global Auto* lawsuit against Empire, which was in the business of transporting automobiles overseas.  (*See* Complaint, GA Dkt. 1; Amended Complaint, GA Dkt. 47, ¶ 1.)  Global alleged claims for breach of maritime contract, injunctive relief, replevin, conversion, tortious interference, breach of contract, fraud, and other state law causes of action, based on the alleged "unlawful conversion" of cars that were owned by Global and contracted for sale to Global's customers.  (*See* Amended Complaint, GA Dkt. 47, ¶¶ 1–4, 89–145.)

On June 28, 2013, eleven individuals[4] sought to intervene in *Global Auto*, claiming that they had wired money to Kapustin, the alleged President and a director of Global Auto, Inc.,[5] to purchase a car, but either never received a car, never received a refund, or received a "flooded or salvaged vehicle."  (Memorandum in Support of Amended Motion to Intervene, GA Dkt. 23-1, at 1–3.)  On November 5, 2013, the Honorable Sandra L. Townes denied the motion to intervene, finding, *inter alia*, that "most of the facts and claims alleged in the proposed intervenors' pleading had at most, marginal relevance to the claims and defenses raised in [the *Global Auto*] action."

---

with "GA," citations to the docket for *Empire United* will be prefaced with "EUL," and citations to the docket for the New Jersey Action will be prefaced with "DNJ."

[3] Beyond this overview, the Court assumes the parties' familiarity with the lengthy and convoluted factual and procedural history of these cases.  Further relevant background for the instant motion is aptly summarized in the R&R.

[4] The Court notes that NJ Plaintiffs' current counsel, Anna V. Brown, represented eight of these eleven individuals.

[5] Kapustin allegedly transacted business in New York State through Global Auto, Inc. and various other corporate alter egos.  (Complaint, EUL Dkt. 1, at ¶ 6.)

(Memorandum and Order, GA Dkt. 38, at 15–17.)  Shortly after, on November 25, 2013, the eleven individuals joined with other customers, now comprising the NJ Plaintiffs, to file the New Jersey Action against, *inter alia*, Global and Empire.[6]  (*See generally* Complaint, DNJ Dkt. 1.)

On February 28, 2014, Empire answered and asserted counterclaims against Global in *Global Auto*, including for breach of contract, common law fraud, tortious interference with contract, and libel.  (*See* Answer and Counterclaims, GA Dkt. 51, at ECF[7] 31–37, ¶¶ 75–118.)  On April 23, 2014, Empire commenced the *Empire United* lawsuit,[8] alleging claims of breach of contract, common law fraud, tortious interference with contract, and libel (*see generally* Complaint, EUL Dkt. 1), which was consolidated with *Global Auto* shortly thereafter (5/19/2014 GA Docket Order).  On October 7, 2014, Global filed crossclaims in the New Jersey Action against, *inter alia*, Empire, alleging essentially the same claims it alleged against Empire in *Global Auto*.[9]  (DNJ, Dkt. 88, ¶¶ 638–703.)

On February 13 and March 5, 2015, the Court granted requests by Global's counsel to withdraw from *Global Auto* and *Empire United*.  (2/13/2015 GA Docket Order; 3/5/2015 GA Minute Order.)  On April 27, 2015, default was entered against Global in the New Jersey Action

---

[6] On November 16, 2015, the NJ Plaintiffs voluntarily dismissed their claims against Empire in the New Jersey Action.  (*See* DNJ Dkt. 293.)

[7] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[8] This lawsuit was filed against SK Imports, Kapustin, Irina Kapustina (Kapustin's spouse and business partner) and Michael Goloverya (Kapustina's son).  (*See* Complaint, EUL Dkt. 1, ¶¶ 5–8.)

[9] (*See* DNJ Dkt. 88, at ¶¶ 638–46 (breach of contract); ¶¶ 647–52 (breach of fiduciary duty), ¶¶ 653–57 (conversion), ¶¶ 658–661 (tortious interference with business relations), ¶¶ 662–79 (violation of the Shipping Act of 1984), ¶¶ 680–90 (common law fraud), ¶¶ 691–93 (action to pierce corporate veil), ¶¶ 694–99 (replevin), ¶¶ 700–03 (injunctive relief).)

as a sanction for misconduct by Global's counsel (DNJ Dkt. 189; *see* DNJ Dkt. 169-42, at 28–36 (alleging sanctionable misconduct and requesting default judgment)), and several months later, default judgment was entered against Global in favor of the NJ Plaintiffs in the amount of $2,228,069.29 (DNJ Dkt. 272).   On October 9, 2015 Global amended its crossclaims against Empire (DNJ Dkt. 274), and then, on October 12, 2015, entered into an agreement (the "Assignment Agreement") with the NJ Plaintiffs wherein it assigned the crossclaims in the New Jersey Action and claims in *Global Auto* to the NJ Plaintiffs in partial satisfaction of the default judgment (GA Dkt. 112-3, ¶ 2 (assigning to NJ Plaintiffs "all and any actions or causes of action against the Empire Defendants relating to the conduct, transactions, and occurrences underlying the EDNY Litigation and NJ Cross-Claims")[10].)

Meanwhile, on September 30, 2015, in *Global Auto*, Judge Townes dismissed Global's claims against Empire because of the Global corporations' failure to obtain new counsel; notably, the claims were dismissed *without* prejudice because Judge Townes found that "[t]o the extent that [Global's] claims against [Empire] are meritorious, [Global's] creditors may wish to pursue those claims in the event they obtain judgment against [Global] . . . [and] dismissal with prejudice might impede the NJ Plaintiffs' ability to recover on a judgment against [Global]." (GA Dkt. 109, at 10–12.)   On October 2, 2015, the Clerk of Court entered default against the Global corporations (not individual defendants Kapustin, Kapustina, and Goloverya) in relation to Empire's claims in *Empire United* and counterclaims in *Global Auto*.   (GA Dkt. 110.)   On December 9, 2015, the NJ Plaintiffs were substituted for Global as crossclaim plaintiffs against Empire in the New Jersey

---

[10] "EDNY Litigation" refers to Case No. 13-cv-02479, *i.e.*, *Global Auto*.  (GA Dkt. 112-3, at 1.)  "Empire Defendants" refers to Michael Hitrinov a/k/a Michael Khitrinov and Empire United Lines, Co., Inc.  (*Id.*)  "NJ Cross-Claims" refers to Global Auto's crossclaims in the New Jersey Litigation alleging, *inter alia*, that Empire Defendants seized 16 vehicles without any legal or equitable right.  (*Id.* at 2.)

Action.[11]   (*See* DNJ Dkt. 279 (Notice of Motion to Substitute Crossclaim Plaintiffs); 12/9/2015

Order, DNJ Dkt. 304 (granting motion to substitute).)

Two years after the entry of default, on January 2, 2018, the Court issued a scheduling

order in *Global Auto*, stating:

> It has been two years since the District Judge dismissed plaintiffs' claims without
> prejudice and ordered the Clerk to enter default on defendants' counterclaims.  No
> action has occurred since.  Defendants are hereby ordered to move for default
> judgment on their counterclaims no later than 1/19/2018.  Opposition papers are
> due on 2/9/2018.  Reply due on 2/16/2018.  Should defendant fail to move for
> default judgment by said date this case will be dismissed for failure to prosecute.

(1/2/2018 GA Scheduling Order.)  On January 5, 2018, Empire's counsel requested an extension

of time to move for default judgment explaining, *inter alia*, that events in the New Jersey Action

"may provide the opportunity for a global settlement of the parties' disputes obviating any need

for further motion practice."  (GA Dkt. 115.)  The Court granted this request.  (1/5/2018 GA

Docket Order.)  Over the intervening year, the Court granted several more extensions to the default

judgment deadline to allow for settlement discussions to continue.  (*See* 3/1/2018 GA Docket

Order; 4/9/2018 GA Docket Order; 8/9/2018 GA Docket Order; 9/27/2018 GA Minute Order.)  On

December 4, 2018, Empire's counsel moved to withdraw and updated the Court on the status of

settlement, noting that "[t]o the extent further settlement discussions do not result in a complete

settlement, all that remains is for [Empire] to move for default judgment and for an inquest on

damages to be conducted with respect to the corporate parties, and to proceed forward with a trial

against the *pro se* defendants."  (GA Dkt. 121, at 2.)  For the next year, upon reports of

impediments to, but, nevertheless, progress toward settlement, the Court continued to grant

extensions to the default judgment deadline to allow for further settlement discussions.  (*See, e.g.*,

---

[11] The NJ Plaintiffs have not sought to substitute themselves for Global in *Global Auto* or
*Empire United* under Federal Rule of Civil Procedure 25.

2/13/2019 GA Docket Order; 5/31/2019 GA Docket Order; 7/30/2019 GA Docket Order.)

However, on October 11, 2019, upon granting another extension of time, the Court ordered that

> [t]he parties must execute the settlement agreement and file a stipulation of dismissal by December 30, 2019. No further extensions will be granted. If the stipulation of dismissal is not filed by that time[,] this case will proceed and the Counterclaimant in *Global Auto* and Plaintiff in *Empire United Lines* shall move for a default judgment within thirty days. Given the history of this case, the failure to do so will result in dismissal of the counterclaims and the consolidated case.

(10/11/2019 EUL Docket Order.) When *pro se* defendants Kapustina and Goloverya sought a further extension to finalize the settlement, citing challenges presented by Goloverya's continued incarceration (*see* GA Dkt. 131), the Court denied that request and affirmed its previous Order as follows:

> [I]f the stipulation of dismissal is not filed by December 30, 2019[,] this case will proceed, and the Counterclaimant in *Global Auto* and Plaintiff in *Empire United Lines* shall move for a default judgment by January 29, 2020. Again, because of the history of this case, failure to do so will result in dismissal of the counterclaims and the consolidated case.

(12/26/2019 GA Docket Order.) After no stipulation of agreement was filed on December 30, 2019, Empire timely filed a motion for default judgment and assessment of damages on January 29, 2020. (Empire's Memorandum of Law in Support of Their Motion for the Entry of Default Judgment and Assessment of Damages ("Empire's Mem."), GA Dkt. 134; *see* Dkts. 133–138.) On February 4, 2020, the NJ Plaintiffs filed a letter motion seeking an extension of time to oppose Empire's motion and/or request other relief. (GA Dkt. 139.) The Court granted that request and several additional requests by the NJ Plaintiffs for more time. (3/30/2020 GA Docket Orders; 5/1/2020 GA Docket Order.) On May 22, 2020, the NJ Plaintiffs filed their motion to transfer, or in the alternative, intervene and oppose Empire's motion for default judgment and assessment of damages. (NJ Plaintiffs' Memorandum of Law in Opposition to Empire's Motion for Default Judgment and Assessment of Damages and to Intervene ("NJ Pls.' Mem."), Dkt. 148.)

7

The Court referred the NJ Plaintiffs' motion to Judge Reyes. (5/26/2020 GA Docket Order.) On January 12, 2021, Judge Reyes issued the R&R recommending that the motion to intervene be denied as untimely and the motion to transfer be denied for lack of standing. (R&R, GA Dkt. 154.) On February 9, 2021, NJ Plaintiffs filed objections to the R&R. (NJ Plaintiffs' Objections to Magistrate Judge Ramon E. Reyes, Jr.'s January 12, 2021 Report and Recommendations ("Objections"), GA Dkt. 155.)

## STANDARD OF REVIEW

When reviewing an R&R, a district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a dispositive motion is referred to a magistrate judge, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 25 (2d Cir. 2012) (summary order) ("Although under 28 U.S.C. § 636(b)(1)(B), a magistrate judge may submit 'recommendations for the disposition, by a judge of the court,' of dispositive motions, such recommendations are subject to *de novo* review by the presiding district judge.").

"[T]here is authority within the Second Circuit holding that a motion to intervene is dispositive, at least insofar as it is brought as of right under Rule 24(a)[.]" *Madison Stock Transfer, Inc. v. Marine Expl., Inc.*, No. 15-CV-6394 (PKC) (ST), 2017 WL 383351, at *1 n.2 (E.D.N.Y. Jan. 27, 2017) (quotation omitted); *see New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 996 F.2d 21, 25 (2d Cir. 1993) (deciding "the narrow question of who must decide an applicant's motion for intervention" and holding that "[w]ithout the consent of the 'intervenors', the magistrate judge's order has the effect only of a report and recommendation to the district

judge, who upon the filing of objections must review *de novo* the recommendation"); *Stackhouse v. McKnight*, 168 F. App'x 464, 467 (2d Cir. 2006) (summary order) ("Based upon the reasoning in *Chinese TV,* therefore, we find that [the] Magistrate Judge[]'s order denying the motion to intervene was the equivalent of a report and recommendation subject to [the District] Judge[]'s *de novo* review."); *see also Medina v. Fischer*, No. 11-CV-0176 (LAP) (JLC), 2013 WL 1294621, at *1 (S.D.N.Y. Mar. 29, 2013) (citing *Chinese TV* and *Stackhouse* and finding that "Second Circuit case law holds that a motion to intervene is dispositive, at least insofar as it is brought 'as of right' under Rule 24(a)"), *report and recommendation adopted,* 2013 WL 3186932 (S.D.N.Y. June 24, 2013) (citing Rule 72(b) and finding R&R denying motion to intervene to be correct and appropriate upon *de novo* review). Although "[o]ther courts in this Circuit have [] concluded that motions to intervene are not dispositive,"[12] *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950 (AT) (JCF), 2016 WL 11645644, at *2 (S.D.N.Y. June 6, 2016) (collecting district court cases, distinguishing *Chinese TV*, and affirming magistrate judge order granting permissive intervention pursuant to Rule 24(b) as not clearly erroneous), the Court is not bound by those decisions, and so, in the absence of clear guidance from the Second Circuit, and out of an abundance of caution, given that the NJ Plaintiffs have filed objections, the Court will treat the instant motion as dispositive. Therefore, the Court will review *de novo* the portions of Judge

---

[12] In their opposition papers, Empire cites one such case, *United States v. Certain Real Prop. and Premises Known as 1344 Ridge Rd., Laurel Hollow, Syosset, N.Y.*, 751 F. Supp. 1060 (E.D.N.Y. 1989), in support of the argument that motions to intervene are not dispositive, and thus, the proper standard for review is "clearly erroneous" or "contrary to law." (GA Dkt. 156, at 1–2.) The Court does not find this case persuasive as it appears that no objections were filed there and the court concluded, without any analysis, that the motion to intervene was not dispositive because the Government had failed to cite any authority or show how the motion to intervene was dispositive of a claim or defense of a party. *See* 751 F. Supp. at 1061.

Reyes' recommendation to which NJ Plaintiffs' have properly objected.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

## DISCUSSION

The NJ Plaintiffs have moved to intervene both as of right pursuant to Federal Rule of Civil Procedure ("Rule") 24(a) and by permission pursuant to Rule 24(b).[13]  (GA Dkts. 146, 148.)  Under Rule 24(a),

> the court *must* permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a) (emphasis added).  Under Rule 24(b) "the court *may* permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b) (emphasis added).

> To be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that

---

[13] The NJ Plaintiffs also moved for a transfer of venue to the United States District Court for the District of New Jersey.  (NJ Pls.' Mem., GA Dkt. 148, at 11–12.)  Judge Reyes recommended the Court deny the motion to transfer because, upon determination that the NJ Plaintiffs' motion to intervene was untimely and must be denied, Judge Reyes further determined that the NJ Plaintiffs' lacked standing to seek transfer.  (R&R, GA Dkt. 154, at 15–16.)  The NJ Plaintiffs' did not object to this portion of the R&R.  The Court agrees with Judge Reyes' determination and will not revisit that issue here.  *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116 (2d Cir. 1992) ("[N]on-parties usually lack standing to challenge venue dispositions."); *Calderon v. Clearview AI, Inc.*, No. 20-CV-1296 (CM), 2020 WL 2792979, at *3 (S.D.N.Y. May 29, 2020) ("Before [non-party] can seek []dismissal, transfer, or stay [he] must prevail on his motion to intervene"); *Phoenix Gen. & Health Servs., Inc. v. Advanced Med. Diagnostic Corp.*, 162 F. Supp. 2d 146, 155 (E.D.N.Y. 2001) (holding that non-party, who had neither moved to intervene nor join the action, lacked standing to move to transfer venues), *aff'd in relevant part, remanded in part sub nom. Kivita v. Phoenix Gen. & Health Servs., Inc.*, 51 F. App'x 348 (2d Cir. 2002) (summary order).

the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

*Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).   The Second Circuit has "underscored that a failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application."   *Id.* (emphasis in original, and quotation and alteration omitted).   "[T]he proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention."   *Kamdem–Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y.2016).

In determining the timeliness of a motion to intervene, courts may consider the following factors:

> (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness.

*Floyd*, 770 F.3d at 1058 (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006)).   "Among the most important factors in a timeliness decision is 'the length of time the applicant knew or should have known of his interest before making the motion.'" *Tummino v. Hamburg*, 260 F.R.D. 27, 36 (E.D.N.Y. 2009) (quoting *Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir.1996)).   The timeliness determination "is within the discretion of the district court, 'evaluated against the totality of the circumstances before the court.'"   *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (citation omitted).

The NJ Plaintiffs devote only one-and-a-half pages of their pending motion to their request to intervene, arguing that the motion was timely because it was "submitted within the time scheduled for filing a response to [Empire's] instant Motion," *i.e.*, Empire's motion for default

judgment filed on January 29, 2020,[14] and because Empire waited five years from the entry of

default on October 2, 2015 to actually move for default judgment.[15]   (NJ Pls.' Mem, GA Dkt. 148,

at 13–14.)   Judge Reyes rejected these arguments and recommended that the NJ Plaintiffs' motion

to intervene be denied as untimely because (1) the NJ Plaintiffs knew of their purported interest in

this litigation at the very latest on October 12, 2015, when they effectuated the Assignment

Agreement with Global—four years and seven months before they filed the motion to intervene;

(2) the NJ Plaintiffs' intervention "on the eve of final judgment" would "certainly prejudice

Empire, increasing the cost of litigation through proposed additional discovery and delaying the

resolution of its motion for default judgment for an indeterminate period of time;" (3) the prejudice

to the NJ Plaintiffs is "not a foregone conclusion" as the Court "must still determine Empire's

motion for default judgment on both liability and damages" and it is "unclear whether the court in

the New Jersey Action would afford the default judgment preclusive effect," and (4) NJ Plaintiffs

---

[14] In fact, as Judge Reyes notes, the NJ Plaintiffs did not file their motion within this timeframe, but rather on May 22, 2020, after seeking multiple extensions.  (*See* GA Dkt. 139 (seeking extension to March 31, 2020), GA Dkt. 143 (seeking extension to April 30, 2020), GA Dkt. 144 (seeking extension to May 22, 2020).)

[15] Beyond the issue of timeliness, the NJ Plaintiffs also argue that they are entitled to intervention as of right because (1) they have a "direct, substantial, and legally protectable" interest as assignees of the Global Entities' claims against E[mpire], which they are pursuing in the New Jersey Action; (2) that interest will be impaired by a disposition in this action because "entry of a default judgment and proposed assessment of damages could have a preclusive effect on their claims pending in the [New Jersey Action];" and (3) that interest is not protected by the parties in this action.  (*See* NJ Pls.' Mem., GA Dkt. 148, at 13–14.)  In addition, the NJ Plaintiffs argue that they are entitled to permissive intervention because their claims and the main action have a "question of law or fact" in common, *i.e.*, they "are pursuing claims against [Empire], which were initially asserted in this action and counterclaims arise out of the same exact facts and purported 'agreements' between [Empire] and Global Entities."  (*Id.* at 14.)  The Court need not reach these additional arguments in support of intervention as, for the reasons explained herein, the Court concludes that the NJ Plaintiffs have failed to demonstrate that the motion to intervene was timely, which, on its own, is a basis for denying the motion. *See NAACP v. New York*, 413 U.S. 345, 369 (1973); *Floyd*, 770 F.3d at 1057.

"do not cite to any unusual circumstances that should be considered in the timeliness determination." (R&R, GA Dkt. 154, at 10–14.)

In their objection, the NJ Plaintiffs principally argue that Judge Reyes misinterpreted the "full procedural history of the case" by overlooking the "complete inaction of [Empire] on the filing of default for 4 years and the Court's own orders warning [Empire] of failure to prosecute," and giving "undue credit to [Empire]'s two-year long continuances to allow them to conduct 'settlement negotiations' with individual parties against whom default was not sought as meritorious." (Objections, GA Dkt. 155, at 2–5.) In so doing, the NJ Plaintiffs argue, Judge Reyes "failed to evaluate the 'totality of circumstances.'" (*Id.* at 5.) The Court disagrees. Having determined the issue of timeliness *de novo*, the Court finds, in agreement with Judge Reyes, that the NJ Plaintiffs' motion to intervene is untimely and should be denied.

## I.   The NJ Plaintiffs Knew of Their Interest for Over Four Years Before Moving to Intervene

The NJ Plaintiffs assert that their interest in this matter is based on their status as "assignees of the Global Entities' claims against [Empire]" and that that interest "is not protected by the parties remaining in this action" because "[n]o attorney appeared on behalf of Global Entities . . . and Mr. Kapustin has not contested the default." (NJ Pls.' Mem., GA Dkt. 148, at 13–14.) Thus, by the NJ Plaintiffs' own admission they knew of their interest in these cases by at least October 12, 2015—the date the Assignment Agreement was executed. (*See* GA Dkt. 112-3, ¶ 2.) As of that date, the NJ Plaintiffs also knew that their interest was not protected because default had already been entered, without challenge or opposition by Global, on October 2, 2015 (GA Dkt. 110). In light of these indisputable and unfavorable facts, the NJ Plaintiffs now argue in their objection that their delay in seeking intervention is nevertheless excusable because Empire took no action for two years after default was entered and not until the Court threatened to dismiss for

failure to prosecute (*see* 1/2/2018 GA Scheduling Order), and then spent the next two years representing to the Court that it intended to enter a stipulation of dismissal (Objections, GA Dkt. 155, at 3–5).  Based on these facts, the NJ Plaintiffs argue that "there was no reason for [the NJ Plaintiffs] to intervene [until] their interest [] became actionable when the motion for assessment of damages was filed by [Empire], thus affecting the same claims that are pending in the [New Jersey Action]." (*Id.* at 5)

The Court rejects the NJ Plaintiffs' arguments as both wrong on the law and inconsistent with the facts.  Without citation to a single case, the NJ Plaintiffs argue that the clock for assessing the timeliness of intervention began to run when its interest "became actionable," *i.e.*, when Empire moved for default judgment, which the NJ Plaintiffs argue, if granted, "could have a preclusive effect" on their pending claims.[16]   (Objections, GA Dkt. 155, at 5.)  However, the timeliness analysis under Rule 24 is not concerned with when an interest became "actionable"; rather, "the clock for intervening starts to run from the moment that a proposed intervenor becomes aware or should have become aware that he or she had interests in the subject matter of the litigation not otherwise protected by the existing parties to the lawsuit." *Penn-Star Ins. Co. v. Maint. Asset Mgmt. Inc.* ("*Penn-Star I*"), No. 17-CV-5047 (NGG) (ST), 2019 WL 4667714, at *3 (E.D.N.Y. Sept. 25, 2019) (emphasis omitted) (quoting *Sec. & Exch. Comm'n v. Callahan*, 193 F. Supp. 3d 177, 202 (E.D.N.Y. 2016)), *aff'd sub nom. Penn-Star Ins. Co. v. McElhatton* ("*Penn-Star II*"), 818 F. App'x 67 (2d Cir. 2020) (summary order).  Courts have rejected arguments similar to

---

[16] Because the NJ Plaintiffs voluntarily dismissed their claims against Empire in the New Jersey Action on November 16, 2015, but preserved the crossclaims assigned to NJ Plaintiffs by Global (DNJ Dkt. 293), the Court assumes that "pending claims" refers to the crossclaims asserted by Global against Empire in the New Jersey Action, which were subsequently assigned to the NJ Plaintiffs (GA Dkt. 112-3), and for which NJ Plaintiffs obtained substitution (12/9/2015 Order, DNJ Dkt. 304).

the one made by the NJ Plaintiffs, where proposed intervenors did not seek to intervene at the time they knew (or should have known) of their interest in the litigation, and instead, waited until some later event triggered the alleged need to intervene.  *See, e.g.*, *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596–97 (2d Cir. 1986) (affirming denial of motion to intervene by homeowners who sought intervention several weeks after entry of a Housing Remedy Order, finding, *inter alia*, that the homeowners' interest "began to gestate when it became generally known that these [housing] sites had been proposed early in the remedy proceedings," and rejecting the argument that prior to the entry of the Order the homeowners' interest was "at best only speculative"); *Disability Advocs., Inc. v. Paterson*, No. 03-CV-3209 (NGG), 2009 WL 5185807, at *3 (E.D.N.Y. Dec. 23, 2009) (rejecting argument that proposed intervenors first learned that their interests might be impaired upon the issuance of a court order directing briefing on injunctive relief, where the complaint, filed six years earlier, identified the injunctive relief that plaintiffs would ultimately seek).

Moreover, "Rule 24 does not require that an applicant's interest be 'crystallized' or that an applicant wait until there is 'no doubt' that his or her interests will be impacted."  *Callahan*, 193 F. Supp. 3d at 203 (alteration and citation omitted).  Instead, applicants should move to intervene "when it becomes apparent that their interests *might* not be protected."  *Id.*; *see Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950 (AT) (JCF), 2015 WL 4619663, at *7 (S.D.N.Y. Aug. 3, 2015) ("If the rule were otherwise, an intervenor could argue that, notwithstanding a ruling seemingly fatal to her interests, she could defer intervening until judgment was entered, an appeal taken and decided, and certiorari denied, merely because she had predicted that the ruling would be reversed at some stage."), *aff'd,* 2016 WL 11645644 (S.D.N.Y. June 6, 2016).  Thus, the NJ Plaintiffs should not have waited over four-and-a-half years from the time it became apparent that their interests might not be protected—until it was crystal clear that Empire would file a motion

for default judgment—to then file a motion to intervene.  *See Callahan*, 193 F. Supp. 3d at 203; *Gutman v. Klein*, No. 03-CV-1570 (BMC), 2015 WL 5022510, at *6 (E.D.N.Y. Aug. 24, 2015) (denying motion to intervene by applicant who adopted a "stay silent until things start going badly" strategy and delayed intervention for more than a dozen years).  That the NJ Plaintiffs may have doubted whether Empire would move for default judgment based on the ongoing settlement negotiations does not diminish the fact that they were on notice of the potential impact to their rights as of the date of assignment on October 12, 2015.  *See Chen-Oster*, 2015 WL 4619663, at *7 (finding that the "triggering event" to alert proposed intervenors that their interest may not be protected was a court order and the fact that subsequent caselaw "cast[] doubt on the continuing viability" of that order did not "diminish its significance as a warning").

The NJ Plaintiffs' argument that its inordinate delay is justified because Empire did not "move to obtain a default judgment for over 5 years . . . , thus effectively abandoning the matter" (GA Dkt. 148, at 13) is ultimately a red herring because the focus of the timeliness analysis is on when the NJ Plaintiffs "knew or should have known of [*their*] interest," *see Floyd*, 770 F.3d at 1058 (emphasis added).  Moreover, this argument ignores the fact that documents filed and orders issued over the intervening years made clear the continued possibility that Empire would move for default judgment.  (*See, e.g.*, 1/2/2018 GA Scheduling Order ("Should defendant fail to move for default judgment by [January 19, 2018] this case will be dismissed for failure to prosecute"); GA Dkt. 115 (January 5, 2018 letter by Empire requesting the current deadline "for moving for default judgment on the counterclaims be extended"); 1/5/2018 GA Docket Order (granting request for extension of time to file motion for default judgment); 4/9/2018 GA Docket Order (same); 8/9/2018 GA Docket Order (same); GA Dkt. 121, at 2 (December 4, 2018 letter from Empire's counsel seeking to withdraw and explaining, *inter alia*, that "[t]o the extent further settlement

16

discussions do not result in a complete settlement, all that remains is for [Empire] to move for default judgment and for an inquest on damages to be conducted with respect to the corporate parties . . ."); 2/13/2019 GA Docket Order (granting extension of time to finalize settlement); 5/31/2019 GA Docket Order (same); 7/30/2019 GA Docket Order (same); 10/10/2019 EUL Docket Order ("If the stipulation of dismissal is not filed [by December 30, 2019] this case will proceed, and the Counterclaimant in *Global Auto* and Plaintiff in *Empire United Lines* shall move for a default judgment [within thirty days].") (emphasis omitted).)  While the Court acknowledges that on several occasions following the entry of default the Court admonished Empire for its delay in resolving these matters, either by stipulating to dismissal or moving for default judgment (*see* 1/2/2018 GA Scheduling Order; 10/11/2019 EUL Docket Order; 12/26/2019 GA Docket Order), Empire never indicated any intention to "abandon" the option of moving for default judgment, and the NJ Plaintiffs' argument that Empire did so "years ago" is baseless and an unpersuasive distraction from their own dereliction since October 12, 2015.

In sum, the NJ Plaintiffs have not offered any reason for the Court to excuse their over-four-and-a-half-year delay in moving to intervene in *Global Auto*.  *Kamdem-Ouaffo*, 314 F.R.D. at 135 ("In most instances, a motion to intervene based on a claim that was known, but not acted upon, for a period of years would be untimely.") (collecting cases).  Upon *de novo* review, the Court concludes that this factor weighs substantially against a finding of timeliness.

## II.    Empire Would be Prejudiced by Intervention at this Late Hour

The NJ Plaintiffs also argue in their objection that Empire will not be prejudiced by intervention because Empire "did nothing since October 2015 to proceed on its claims and then continued to represent to the Court that it will be filing [a] dismissal."  (Objections, GA Dkt. 155, at 5–6.)  The Court disagrees.  It is simply not true that Empire "did nothing" from the time default

was entered against Global on October 2, 2015 to the time it moved for default judgment on January 29, 2020.   Rather, as described above, during the intervening years after the Court's January 2, 2018 Scheduling Order, Empire was engaged in ongoing settlement negotiations with multiple parties that, if successful, would have resulted in a "complete settlement" and obviated the need for Empire to seek a default judgment.   (*See* GA Dkt. 121; *supra* citations to numerous extensions.)   However, when such a settlement was not obtained,[17] Empire expended resources to file, in the NJ Plaintiffs' words, a "voluminous submission" (*see* GA Dkt. 139, at 3) in support its motion for default judgment and an assessment of damages against Global (*see* GA Dkts. 133– 138).   The relief now sought by Empire would "dispos[e] of all claims against all parties in both [*Global Auto* and *Empire United*], thus bringing these cases to a close."   (*See* GA Dkt. 134, at 1.)

While it may be that the Second Circuit has expressed a preference for district courts to reach judgments on the merits, rather than by way of default judgments, *see Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (internal citation omitted), courts faced with motions to intervene must also consider "the balancing interest of Rule 24 in keeping a 'lawsuit from becoming unnecessarily complex, unwieldy or prolonged,'" *see Floyd*, 770 F.3d at 1060 (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) and citing Fed. R. Civ. P 1 ("[The Federal Rules of Civil Procedure] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." (alteration in original))).   Further, while in certain circumstances intervention after entry of default may not prejudice the party seeking entry of default judgment, *see Nat'l Fire Ins. Co. of Hartford v. Starbro Const. Corp.*, No. 08-CV-3200 (NGG), 2009 WL 2602281, at \*2–3 (E.D.N.Y. Aug. 24, 2009)

---

[17] These negotiations resulted in settlement with individual defendants Kapustina and Goloverya.  (*See* Dkt. 134, at 1.)

(rejecting plaintiffs' prejudice argument because motion to intervene was filed *only 30 days* after the suit was commenced and "*no proceedings*, other than the entry of default, *ha[d] been conducted*" (emphasis added)), that is not the case here.

The lawsuits that Empire now seeks to resolve were commenced nearly seven and eight years ago. (*See* Complaint, EUL Dkt. 1 (filed April 23, 2014); Complaint, GA Dkt. 1 (filed April 24, 2013).)  During the intervening years, the parties engaged in motion practice, discovery, settlement negotiations, narrowed the issues for judgment,[18] and Empire has now fully briefed its dispositive motion.  To permit intervention on what is effectively the "eve" of a final resolution of these two matters will undoubtedly increase the cost of litigation, including through possible discovery and/or an evidentiary hearing, which the NJ Plaintiffs have already requested (*see* NJ Pls.' Mem., GA Dkt. 148, at 2, 14, 19), and will delay finality in both matters for an indeterminate period.  Thus, the Court finds that permitting intervention at this late hour not only "creates delay and prejudice" to Empire,[19] but also "undermines the orderly administration of justice."  *See Yonkers Bd. of Educ.*, 801 F.2d at 596 (finding that motion to intervene "more than three months after the remedy proceedings were underway . . . resembles post-judgment intervention, which is generally disfavored"); *see also MasterCard Int'l Inc.*, 471 F.3d at 390–91 (finding prejudice where motion to intervene was filed on the "eve of the preliminary injunction hearing," thereby

---

[18] As Judge Reyes noted, Empire indicated in its motion for default judgment that it is no longer pursuing its claims of common law fraud and tortious interference against Global, despite suffering harm as a result of the alleged conduct.  (GA Dkt. 134, at 16; *see* R&R, Dkt. 154, at 13 n.9.)

[19] The Court also finds that Empire would be prejudiced by the NJ Plaintiffs' intervention because, as Judge Reyes noted, it would prevent Empire from immediately pursuing default judgment on its libel claim—which the NJ Plaintiffs readily admit "does not concern nor overlap[] facts common to [their] claims assigned against [Empire]," yet still advocate should not result in a damages award to Empire.  (GA Dkt. 148, at 21–22; *see* R&R, Dkt. 154, at 13 n.10.)  The NJ Plaintiffs do not address this finding by Judge Reyes in their objections.

postponing resolution of the dispute); *Penn-Star II*, 818 F. App'x at 71 (finding prejudice where motion to intervene was filed approximately seven months after the proposed intervenor knew or should have known about the litigation, "on the eve of settlement, [and] after two years of litigation and negotiation"); *Trustees of Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384 F. Supp. 3d 412, 420 (S.D.N.Y. 2019) ("'[W]here a grant of a motion to intervene would require further discovery, a court may properly deny the motion' for prejudicing the existing parties due to delay." (alteration in original and citation omitted)).   Thus, upon *de novo* review, the Court concludes that intervention would result in prejudice to Empire and finds that this factor also weighs against a finding of timeliness.

### III.    Any Prejudice to the NJ Plaintiffs is Both Speculative and of Their Own Making

In their objection, the NJ Plaintiffs further argue that Judge Reyes' conclusion that the weight of any possible prejudice to the NJ Plaintiffs was "lessened by [their] failure to take affirmative steps to protect [their] own interests," was based on Judge Reyes "fail[ing] to see the totality of circumstances and giving undue credit to [Empire]'s non-action during the four years prior to the filing of the motions for default."   (Objections, GA Dkt. 155, at 6.)   The Court disagrees.

For the reasons already explained, the NJ Plaintiffs' continued finger-pointing at Empire's alleged "non-action" is both inconsistent with the facts and, more importantly, a distraction from the unavoidable reality that the NJ Plaintiffs failed to timely seek intervention and have only themselves to blame.  Here, the "totality of the circumstances" include, most prominently, the NJ Plaintiffs' failure to intervene for four years and seven months after the October 12, 2015 assignment—a factor that Judge Reyes rightfully focused on in assessing the purported prejudice to the NJ Plaintiffs if their motion to intervene is denied.

The NJ Plaintiffs argue that their interest "will be impaired by the disposition of this action because the entry of a default judgment and proposed assessment of damages *could have* a preclusive effect on their claims pending in [the New Jersey Action]." (NJ Pls.' Mem., GA Dkt. 148, at 13–14 (emphasis added).)  The speculative nature of this concern is animated by two unknowns—how the Court will rule on the pending motion for default judgment and assessment damages, and how the New Jersey Court will treat any judgment entered in this action in the New Jersey Action.

"A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).  Rather, on motion by plaintiff, a court may decide to enter a default judgment "if liability is established as a matter of law when the factual allegations of the complaint are taken as true."[20]  *Id.*  Likewise, "[e]ven when a default judgment is warranted . . . the allegations in the complaint with respect to the amount of the damages are not deemed true . . . [and the] court must [] conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  Thus, the Court's eventual determination on Empire's motion for default judgment and an assessment of damages is far from a rubber stamp. Beyond this, the extent to which any judgment by this Court has a preclusive effect in the New

---

[20] The Court recognizes that the thrust of the NJ Plaintiffs' argument in opposing the pending motion for default judgment is that the factual allegations should not be taken as true, however, "[e]xcept for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention."  *Callahan*, 193 F. Supp. 3d at 201 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 474 (2d Cir.2010)).  Therefore, in assessing and deciding the NJ Plaintiffs' request to intervene, the Court does not reach the merits of the claims the NJ Plaintiffs wish to assert upon intervention.

Jersey Action is a matter for another judge on another day and is not a foregone conclusion. *See In re Snyder*, 939 F.3d 92, 100 (2d Cir. 2019) ("The requirement that the underlying issue be 'actually litigated' generally bars a court from giving a default judgment preclusive effect."). In sum, the Court is not persuaded by the NJ Plaintiffs' concern regarding preclusive effect, which rises and falls on speculation,[21] particularly as compared to the prejudice that Empire will unquestionably suffer if intervention is permitted.

This conclusion is underscored by the fact that "any prejudice to the [New Jersey Plaintiffs] 'resulting from the denial of intervention may be attributed to their own failure to seek intervention when they first had reason to become aware' of their interests in the action." *Disability Advocs., Inc.*, 2009 WL 5185807, at *5 (quoting *Yonkers Bd. of Educ.*, 801 F.2d at 595). Once the NJ Plaintiffs became aware of their possibly unprotected interest in this lawsuit on October 12, 2015, "it was incumbent upon [them] to take immediate affirmative steps to protect [their] interests." *Penn-Star I*, 2019 WL 4667714, at *6 (quoting *NAACP*, 413 U.S. at 367). Although some speculative prejudice may befall the NJ Plaintiffs if they are not permitted to intervene, "the weight of the prejudice is lessened by [their own] failure to take affirmative steps to protect [their] interests." *Id.*; *Disability Advocs., Inc.*, 2009 WL 5185807, at *5 ("Although the [purported intervenors] may be prejudiced if intervention is denied, the court is not sympathetic to their self-created plight.")

---

[21] The Court also agrees with Judge Reyes' assessment that while the NJ Plaintiffs point to concerns about possible preclusive effect, their "true purpose" in moving to transfer or intervene is to "preserve Global's assets" as against a "potentially competing creditor," *i.e.*, Empire, in order to ensure that they can satisfy their $2-million default judgment against Global to the maximum extent possible. (R&R, Dkt. 154, at 3 n.4, 13 n.10.) Notably, the NJ Plaintiffs did not dispute nor address Judge Reyes' assessment of their true motivations in this matter.

Thus, upon *de novo* review, the Court concludes that any prejudice to NJ Plaintiffs is speculative and self-created; this factor also weighs against a finding of timeliness.

## IV.   There Are No Unusual Circumstances Militating for a Finding of Timeliness

Finally, the NJ Plaintiffs argue that Judge Reyes was "incorrect" in his conclusion that there are no unusual circumstances warranting intervention.  (GA Dkt. 156, at 6.)  Specifically, the NJ Plaintiffs appear to invoke the doctrine of *in pari delicto*[22] and argue that they should be allowed to intervene to contest Empire's effort to obtain damages "that [Empire] lost on investing in the fraudulent international auto sales scheme" due to a breach of an "illegal and unenforceable" contract with a "convicted criminal."  (*Id.* at 6–7 (arguing that the court should not "serve as paymaster of the wages of crime, or referee between thieves").)  This argument gains the NJ Plaintiffs no traction.  First, as Judge Reyes rightfully found, Plaintiffs did not identify any "unusual circumstances" in their motion that should be considered in the timeliness determination.  (*See* NJ Pls.' Mem., GA Dkt. 148, at 13–14 (discussing bases for intervention with no mention of unusual circumstances).)  Second, the doctrine of *in pari delicto* was raised in the NJ Plaintiffs' motion as an argument that Empire has not established liability as a matter of law and therefore is not entitled to default judgment.  (*Id.* at 15–17.)  Because "an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention," *Callahan*, 193 F. Supp. 3d at 201, the Court will not consider this argument, which ultimately goes to the merits of claims the NJ Plaintiffs wish to raise following intervention.  The *in pari delicto* doctrine has no bearing on or relevance to the timeliness issue

---

[22] "As the Second Circuit has explained, '[t]he *in pari delicto* defense prohibits suits in which the plaintiff is as or more culpable than the defendant in the conduct forming the basis for the complaint.'"  *Neogenix Oncology, Inc. v. Gordon*, 133 F. Supp. 3d 539, 547 (E.D.N.Y. 2015) (quoting *UCAR Int'l, Inc. v. Union Carbide Corp.*, 119 F. App'x 300, 301–02 (2d Cir. 2004)).

and is just another attempted distraction by the NJ Plaintiffs.  Because the NJ Plaintiffs have failed to identify, and the Court cannot find, any unusual circumstances that militate for a finding of timeliness, the Court concludes, upon *de novo* review, that this final factor weighs against a finding of timeliness.

*     *     *

Having considered *de novo* the portions of Judge Reyes' R&R to which the NJ Plaintiffs objected, the Court concludes that the NJ Plaintiffs have failed to meet their burden of demonstrating that their motion to intervene was timely.  Specifically, the NJ Plaintiffs' red-herring argument, focused on Empire's alleged inaction for several years, does not convince the Court that the NJ Plaintiffs' four-year-and-seven-month delay in seeking intervention was excusable.  Further, Empire will certainly be prejudiced by such intervention, while any prejudice to the NJ Plaintiffs is speculative and self-created.  Finally, no unusual circumstances warrant finding timeliness.  Thus, having concluded that the NJ Plaintiffs' motion to intervene was untimely, the Court agrees with Judge Reyes' recommendation to deny the motion, and need not consider whether the NJ Plaintiffs satisfied any other conditions for intervention under Rule 24. *See NAACP*, 413 U.S. at 369.[23]

---

[23] The Court further finds, as did Judge Reyes, that because the NJ Plaintiffs' motion to intervene is denied, they lack standing to seek a transfer of these two matters to the district court in New Jersey.

**CONCLUSION**

The Court adopts Judge Reyes' January 12, 2020 R&R in its entirety.  The NJ Plaintiffs'

motion to intervene is denied as untimely and their motion to transfer is denied for lack of standing.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 31, 2021
        Brooklyn, New York

25